UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARKET PLACE NORTH CONDOMINIUM ASSOCIATION, a Washington non-profit corporation,<br><br>Plaintiff,<br><br>v.<br><br>AFFILIATED FM INSURANCE COMPANY,<br><br>Defendant. | Case No. C17-625 RSM<br><br>ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT |

This matter comes before the Court on Plaintiff Market Place North Condominium Association ("the Association")'s Motion for Partial Summary Judgement against Defendant Affiliated FM Insurance Company ("AFM"). Dkt. #19. The Association asks the Court to rule as a matter of law that "the Association's 2015-16 AFM all-risk property policy covers both water intrusion damage and mold," that AFM owes coverage to the Association under the insurance contract, and that AFM's denial of coverage violates Washington's Insurance Fair Conduct Act ("IFCA"). Defendant opposes this Motion and alternatively seeks relief under Rule 56(d). Dkt. #27. For the reasons set forth below, the Court GRANTS IN PART the Association's Motion.

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT - 1

## I. BACKGROUND

Built in 1982, the Market Place North Condominium is located in downtown Seattle. Dkt. #22 (Peter Danelo Declaration), ¶ 3. The property consists of a high-rise tower, a set of townhomes, a parking garage, and four commercial spaces. *Id*. There are 90 units, 86 of which are residential. *Id*. The property is managed by an Association, which is acting as the Plaintiff in this case. The Association is governed by a volunteer board of directors. *Id*. at ¶ 4. In August 2015, the Association undertook certain outdoor deck repairs of the high-rise tower. *Id*. at ¶ 5. Those repairs were completed in spring 2016 and cost the Association approximately $400,000. Damage uncovered during those deck repairs led the Association to investigate other portions of the building. *Id*. at ¶ 6. After learning in the summer of 2016 that water intrusion damage, or at least signs of it, existed throughout the property, the Association put its insurer, Defendant in this case, on notice.[1] *Id*. at ¶ 7.

The Association's investigation team met in person with AFM in early December 2016 to show damage already uncovered at the property, indicators that additional damage existed, and to discuss the Association's proposed intrusive investigation plan that it wanted AFM to participate in. *See* Dkt. 20-3. AFM rejected the Association's proposal, indicating that it did not believe it had a legal obligation "to investigate potential damage, as opposed to actual damage." Dkt. #20-4 at 2. The Association then sent AFM a notice under Washington's Insurance Fair Conduct Act based on AFM's failure to investigate. Dkt. #20-5. AFM did not change its position, and the Association filed a Complaint in King County Superior Court in March of 2017. *See* Dkt. #6. AFM removed to this Court in April of 2017. Dkt. #1.

---

[1] AFM has insured the property since 2005, and the policies at issue in this case are from 2005 through 2016. *See* Dkts. #20-1 and #20-2.

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 2

The intrusive investigation was scheduled to begin in May of 2017, and AFM eventually agreed to participate and pay half of the associated costs, estimated to be around $150,000. *See* Dkt. #20-6. The investigation consisted of approximately 40 openings throughout the property and produced at least some evidence of long-term and ongoing water intrusion damage, including at the framing and sheathing. Dkt. #21 (Moe Declaration) at ¶5. In June, around the time the investigation was ending, AFM advised that it had changed its position and was now unwilling to pay any of the costs associated with the investigation. *See* Dkt #20-6. The parties attempted to proceed with alternative dispute resolution, which was unsuccessful. After extension of certain deadlines in this case, on September 22, 2017, AFM denied coverage in a letter to the Association. Dkt. #20-7. It is unclear if this letter was a final decision. Although AFM stated coverage decisions and conclusions it also stated that it was providing "preliminary analysis of potential coverage issues," and that it "finds itself in the position of attempting to analyze coverage in the absence of a fully supported and documented claim." *Id*. That letter was accompanied by a report from AFM's consultant, WJE, which documented the presence of water intrusion "deterioration" and "decay" at the property. *See* Dkt. #20-8. AFM's letter primarily relied upon three coverage exclusions: defective construction, faulty maintenance, and/or wear and tear/corrosion/deterioration. *See* Dkt. #20-7. AFM also discussed evidence that the Association may have known about the water damage on an ongoing basis and stated, "[g]iven the large volume of documents the Association has produced, AFM's careful review of the documentation is still ongoing." *Id*. at 14–15.

In response to AFM's apparent coverage denial, the Association provided another IFCA notice in October 2017. Dkt. #20-9. The Association later produced to AFM a scope of repair

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 3

and cost document estimating that repair costs will exceed $27 million. Dkt. #20 (Miller Declaration) at ¶12.

The Association amended its complaint on January 4, 2018, to add an IFCA claim. Dkt. #18. The current Amended Complaint has causes of action for declaratory relief, breach of insurance contract, common law bad faith, breach of the state Consumer Protection Act ("CPA"), negligence, and IFCA. *Id.*

## II. DISCUSSION

### A. Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are those which might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248. In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

On a motion for summary judgment, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004). The Court must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994). However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 4

## B. Analysis

### 1. Determination of Coverage

Under Washington law, interpretation of an insurance contract is a question of law. *Overton v. Consol. Ins. Co.*, 145 Wn.2d 417, 424, 38 P.3d 322 (2002). Determining whether coverage exists is a two-step process. The insured must first show the loss falls within the scope of the policy's insured losses. *McDonald v. State Farm Fire & Casualty Co.*, 119 Wn.2d 724, 731 837 P.2d 1000, 1003-1004 (1992). To avoid coverage, the insurer must then show the loss is excluded by specific policy language. *Id*. When interpreting an insurance policy, "ambiguities are resolved in favor of the policyholder." *Eurick v. Pemco Ins. Co.*, 108 Wn.2d 338, 340, 738 P.2d 251, 252 (1987) (citing *E-Z Loader Boat Trailers, Inc. v. Travelers Indem. Co.*, 106 Wn.2d 901, 907, 726 P.2d 439 (1986)). In addition, "exclusionary clauses are to be construed strictly against the insurer." *Id.* (citing *Farmers Ins. Co. v. Clure*, 41 Wn. App. 212, 215, 702 P.2d 1247 (1985)). "The terms of a policy should be given a fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance." *Overton*, 145 Wn.2d at 424.

The Association discusses how the Policy affords "all risk" coverage, covering any peril that is not specifically excluded. Dkt. #19 at 11 (citing *Fisher Commc'ns, Inc. v. Travelers Prop. Cas. Co. of Am.*, No. C11-1225 TSZ, 2012 WL 12883115, at *3 (W.D. Wash. Sept. 4, 2012)). Because the policy does not explicitly exclude "mold," or "water intrusion damage," these perils would therefore be covered. The Association relies heavily on *Churchill v. Factory Mut. Ins. Co.*, 234 F. Supp. 2d 1182 (2002), where this Court ruled on FM Global's (AFM is a member of FM Global) all-risk property policies. In *Churchill*, the Court looked at policies that did not include any exclusions for mold or water intrusion damage, and found that mold

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 5

and water intrusion were covered. In addition, the Court ruled that a litany of other exclusions cited by the insurer in *Churchill*, including defective construction, and wear and tear/corrosion/deterioration, did not serve to exclude water intrusion damage or mold. 234 F. Supp. 2d at 1189. Although the Association admits that the 2005-2015 policies are not identical to the policies in *Churchill*, it argues that the 2015-16 policy is the same in that it does not include an exclusion for water intrusion damage or mold.

AFM argues that questions of fact exist as to whether there was covered water damage, but perhaps more importantly that discovery in this case has revealed documents showing that the loss at issue in this case may not have been "fortuitous." *See* Dkt. #27. The Court will focus on this second argument as it is dispositive for ruling on this Motion.

"The burden of demonstrating fortuity is not a particularly onerous one." *Frank Coluccio Constr. Co. v. King County*, 136 Wn. App. 751, 768, 150 P.3d 1147, 1156 (2007) (citing *Morrison Grain Co. v. Utica Mut. Ins. Co.*, 632 F.2d 424, 430 (5th Cir. 1980)). The determination of whether a loss is "fortuitous" has three components:

> (a) a loss which was certain to occur cannot be considered fortuitous, and may not serve as the basis for recovery under an all-risk insurance policy;
>
> (b) in deciding whether a loss was fortuitous, a court should examine the parties' perception of risk at the time the policy was issued;
>
> (c) ordinarily, a loss which could not reasonably be foreseen by the parties at the time the policy was issued is fortuitous.

*Churchill*, 234 F. Supp. 2d at 1188-89 (quoting *Underwriters Subscribing to Lloyd's Ins. Certificate No. 80520 v. Magi, Inc.*, 790 F. Supp. 1043, 1048 (E.D. Wash. 1991)). The test for fortuity is a subjective, not objective, one and involves questions of fact. *Frank Coluccio*

*Constr. Co., supra* (citing *Hillhaven Props., Ltd. v. Sellen Constr. Co.*, 133 Wn.2d 751, 758, 948 P.2d 796 (1997)).

*Churchill,* relied on by the Association, states that "[d]espite its express terms, every all-risk policy contains an unnamed exclusion—the loss must be fortuitous in nature." 234 F. Supp. 2d at 1188. AFM's Response brief cites to records from the early 2000s indicating that the Association was aware of mold and water intrusion problems, had engaged in some repairs, and was aware of continuing need for repairs to handle water leaks. *See* Dkt. #27 at 3 (citing Dkt. #28-4 exhibits 4 through 7). These documents raise important questions as to the certainty of the loss at issue in this case, AFM's perception of the risk at the time the policy was issued, and whether the loss was reasonably foreseeable. AFM argues that the Association has the burden of demonstrating fortuity, and that there are questions of fact based on the current record, with further discovery ongoing. Dkt. #27 at 19.

The Association asserts that AFM cannot argue fortuity now, in litigation, because it was not a basis for denying coverage. Dkt. #30 at 2. The Association labels the September 2017 letter as a "final written coverage determination." *Id*.

The Court disagrees with the Association's logic. The fortuity requirement is inherent in every all-risk policy. *See Churchill*, *supra*. Furthermore, it is not clear that AFM's September 2017 letter constituted a final written denial of coverage, as it repeatedly stated that its conclusions were preliminary and that the investigation was ongoing. Finally, the Court is not convinced by any of the Association's legal citations that this issue cannot be raised by AFM based on records produced in subsequent discovery if there was no reasonable way for AFM to have access to that information prior to denying coverage. As it stands, sufficient questions of fact as to fortuity exist to preclude summary judgment, based on the record before

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 7

the Court. There is at least some evidence indicating that the Association knew of the risk of continued water damage and mold prior to the issuance of the insurance policy. The Association cites no legal basis for obtaining summary judgment as to coverage when such questions of fact as to fortuity remain.

Despite all of the above, the Court notes that under *Churchill* and other cases cited by the Association, the 2015-16 Policy covers water intrusion damage and mold. The Court notes that AFM does not appear to contest this in its briefing. The Court takes no position as to whether the loss at issue falls under these or other categorizations. The Court will grant summary judgment as to this limited issue.

### 2. IFCA Claim

IFCA allows an insured who is "unreasonably denied a claim for coverage or payment of benefits by an insurer [to] bring an action in the superior court of this state to recover the actual damages sustained." RCW § 48.30.015. Ordinarily, whether an insurer acts in bad faith is a question of fact for the jury, unless reasonable minds could reach but one conclusion. *Smith v. Safeco Ins. Co.*, 150 Wn.2d 478, 78 P.3d 1274, 1277 (2003). Context is critical to determining whether an insurer committed bad faith. *See Am. Mfrs. Mut. Ins. Co. v. Osborn*, 104 Wn. App. 686, 17 P.3d 1229, 1236 (2001); *Keller v. Allstate Ins. Co.*, 81 Wn. App. 624, 915 P.2d 1140, 1145 (1996) ("To determine whether [an insurer] acted reasonably, fairly, or deceptively, it is necessary to consider the circumstances surrounding the allegedly improper act.").

AFM argues that there are numerous questions of fact raised by the factual circumstances surrounding MPN's allegations of extra-contractual liability. Dkt. #27 at 22–23. The Court again agrees. It is not possible for the Court to say that a jury could reach but one

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 8

conclusion as to bad faith in this case, or the reasonableness of AFM's denial of coverage, given the extensive back and forth communication between counsel for the parties. Viewing the evidence above and drawing all reasonable inferences in the light most favorable to AFM as the non-moving party, the Court must conclude that a genuine issue for trial remains on the IFCA claim.

Given all of the above, the Court need not address AFM's request under Rule 56(d). *See* Dkt. #27 at 16.

### III. CONCLUSION

Having reviewed the relevant briefing, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS that Plaintiff Market Place North Condominium Association's Motion for Partial Summary Judgement against Defendant Affiliated FM Insurance Company (Dkt. #19) is GRANTED IN PART as set forth below:

1) The Association's 2015-16 AFM all-risk property policy covers both water intrusion damage and mold.

2) In all other respects, the Association's Motion for Partial Summary Judgment is DENIED.

DATED this 7 day of May 2018.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 9