UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARKET PLACE NORTH CONDOMINIUM ASSOCIATION, a Washington non-profit corporation,<br><br>Plaintiff,<br><br>v.<br><br>AFFILIATED FM INSURANCE COMPANY,<br><br>Defendant. | Case No. C17-625 RSM<br><br>ORDER GRANTING IN PART PLAINTIFF'S MOTION TO COMPEL DOCUMENTS |

This matter comes before the Court on Plaintiff Market Place North Condominium Association ("the Association")'s Motion to Compel Documents. Dkt. #35. For the reasons set forth below, the Court GRANTS IN PART the Association's Motion.

## I. BACKGROUND

A full background of this case is not necessary for the purposes of this Motion.

The Market Place North Condominium is located in downtown Seattle. Dkt. #22 (Peter Danelo Declaration), ¶ 3. The property consists of a high-rise tower, a set of townhomes, a parking garage, and four commercial spaces. *Id.* The property is managed by an Association, which is acting as the Plaintiff in this case. In August 2015, the Association undertook certain

ORDER GRANTING IN PART PLAINTIFF'S MOTION TO COMPEL DOCUMENTS - 1

outdoor deck repairs of the high-rise tower. *Id*. at ¶ 5. Those repairs were completed in spring 2016 and cost the Association approximately $400,000. Damage uncovered during those deck repairs led the Association to investigate other portions of the building. *Id*. at ¶ 6. After learning in the summer of 2016 that water intrusion damage, or at least signs of it, existed throughout the property, the Association put its insurer, Defendant in this case, on notice.[1] *Id*. at ¶ 7.

The Association's investigation team met in person with AFM in early December 2016 to show damage already uncovered at the property, indicators that additional damage existed, and to discuss the Association's proposed intrusive investigation plan that it wanted AFM to participate in. *See* Dkt. 20-3. AFM rejected the Association's proposal, indicating that it did not believe it had a legal obligation "to investigate potential damage, as opposed to actual damage." Dkt. #20-4 at 2. The Association then sent AFM a notice under Washington's Insurance Fair Conduct Act based on AFM's failure to investigate. Dkt. #20-5. AFM did not change its position, and the Association filed a Complaint in King County Superior Court in March of 2017. *See* Dkt. #6. AFM removed to this Court in April of 2017. Dkt. #1. Later the Association amended to add an IFCA claim after it believed coverage was denied in a September 22, 2017 letter from AFM. *See* Dkt. #20-7. As the Court has previously stated, it is unclear if this letter was a final decision. Although AFM stated coverage decisions and conclusions it also stated that it was providing "preliminary analysis of potential coverage issues," and that it "finds itself in the position of attempting to analyze coverage in the absence of a fully supported and documented claim." *Id*.

---

[1] AFM has insured the property since 2005, and the policies at issue in this case are from 2005 through 2016. *See* Dkts. #20-1 and #20-2.

ORDER GRANTING IN PART PLAINTIFF'S MOTION TO COMPEL DOCUMENTS - 2

Discovery is proceeding in this case, and this Motion was filed to address the issue of attorney-client privilege asserted by AFM for certain documents. AFM provided the Association with documents created during its investigation including (1) a file titled "claim file," (2) emails of DiAnna Webber (AFM's principal adjuster of the Association's claim), and (3) emails of two other AFM employees, Richard Sunny and Erik Lonson, involved in the adjustment and denial of the Association's claim. Dkt. #36 at 2. AFM provided several privilege logs claiming the attorney-client privilege for these and other documents. *See* Dkt. #36-1. According to the Association, AFM claims this privilege for some communications created seven months before this suit was filed and 13 months before the apparent coverage denial letter in September 2017. *Id*. at 6.

The Association argues that it is entitled to the above discovery pursuant to *Cedell v. Farmers Ins. Co. of Washington*, 176 Wn.2d 686, 295 P.3d 239 (2013) and the civil fraud exception.

## II. DISCUSSION

### A. Legal Standard

"Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). If requested discovery is not answered, the requesting party may move for an order compelling such discovery. Fed. R. Civ. P. 37(a)(1).

The party that resists discovery has the burden to show why the discovery request should be denied. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

### B. Analysis

The Association argues that, pursuant to *Cedell*, the attorney-client privilege generally does not apply to the claims-adjustment process, but that *Cedell* recognized an exception when the attorney is not actually engaged in investigating and evaluating or processing the claim. Dkt. #35 at 7. The Association contends that AFM should have sought a protective order prior to the documents being due and asked the Court to undertake an in camera review of the documents it intended to withhold. *Id*. at 8. Finally, the Association argues that the civil fraud exception applies here. Dkt. #35 at 11–12. The Association seeks an order to produce "all documents on the four privilege logs at issue that [AFM] is withholding based on attorney-client privilege (and any similar documents that it intends to withhold from future productions on the same grounds)." *Id*. at 6–7.

AFM argues that, although it did hire counsel at an early stage, "counsel has not performed AFM's adjustment or investigation of [the Association]'s Notice of Loss or Claim— that was done by AFM adjusters and its consultants at WJE, who attended MPN's invasive exploratory investigation." Dkt. #38 at 5. AFM states that counsel only "provided legal advice and strategy relating to coverage and AFM's obligations under the Policy." *Id*. AFM asserts that it has produced a variety of un-redacted attorney-client communications, redacting or withholding "only attorney fee invoices and communications where AFM counsel was asked to or did provide legal advice or strategy as to AFM's "potential liability" or coverage, which *Cedell* protects." *Id*. at 4. AFM spends significant time arguing that its use of counsel was accelerated by the Association's early filing of this lawsuit, at one point stating that the

ORDER GRANTING IN PART PLAINTIFF'S MOTION TO COMPEL DOCUMENTS - 4

Association "sued before completing its own invasive exploratory investigation—the results of which it had insisted were necessary before it could inform AFM what the 'nature and extent' of loss was!" *Id*. at 7. AFM cites to *Richardson v. Gov't Employees Ins. Co.*, 200 Wn. App. 705, 714, (2017) for the proposition that *Cedell* discovery is cut off once litigation commences. *Id*. at 9–10. However, this Court has recently found in a similar case that "nothing in *Cedell* limits the discoverability presumption to prelitigation evidence, and *Richardson*, *supra*, is inapposite to the facts of this case as the investigation occurred after litigation commenced." *Westridge Townhomes Owner Ass'n v. Great Am. Ins. Co.*, No. C16-1011RSM, 2018 WL 993962 (W.D. Wash. Feb. 21, 2018). AFM argues that this case is distinct from *Westridge* because, *inter alia*, the initial Complaint "asserted contractual **and extra-contractual** claims." Dkt. #38 at 10 (emphasis in original).

On Reply, the Association argues that it "was able, after comparing and contrasting multiple iterations of privilege logs submitted by AFM with contradictory descriptions and categorizations of documents, to identify four key letters signed by DiAnna Webber that appeared to have been drafted by AFM's attorneys at Wilson Smith Cochran Dickerson (WSCD)." Dkt. #42 at 1–2. These letters are part of the documents withheld by AFM. The Association cites to *Bagley v. Travelers Home & Marine Ins. Co.*, No. C16-0706 JCC, 2016 WL 4494463, *3 (W.D. Wash. Aug. 25, 2016) as a case on point where the Court held that *Cedell* "applies broadly to the quasi-fiduciary task of claim handling, and is not limited to only pre-litigation activities."

This case, originally about water damage to a condominium complex, has devolved into a shouting match between lawyers accusing each other of bad faith. The Court finds that AFM has not established solely through its declarations that the above exception to the *Cedell* rule

ORDER GRANTING IN PART PLAINTIFF'S MOTION TO COMPEL DOCUMENTS - 5

applies to these documents. The Court agrees that *Cedell* applies broadly to the quasi-fiduciary task of claim handling, and is not limited to only pre-litigation activities in this case. The Court is concerned by the fact that AFM had outside counsel create drafts of a coverage analysis letter. To get to the bottom of the issues raised in this Motion, the Court will order an in camera review of all de-duplicated records remaining in AFM's privilege log, both pre- and post-litigation. Documents need not be submitted for review if the mediation privilege under FRE 408 applies or if the record is a legal invoice, as the Court is not convinced these could be investigatory or claim handling in nature.

### III. CONCLUSION

Having reviewed the relevant briefing, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS that Plaintiff Market Place North Condominium Association's Motion to Compel Documents (Dkt. #35) is GRANTED IN PART as set forth below:

1) The Court will conduct an in camera review of the documents at issue.
2) The parties are to meet and confer and agree on the documents to be submitted for review based on the Court's ruling above. The parties shall take every effort to minimize the number of documents that need to be reviewed.
3) AFM is to submit these documents to the Court no later than **fourteen days** after the date of this Order.
4) In all other respects, the Association's Motion is DEFERRED. The Court may request additional briefing if necessary to rule on remaining issues.

//

//

ORDER GRANTING IN PART PLAINTIFF'S MOTION TO COMPEL DOCUMENTS - 6

DATED this 12th day of July 2018.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER GRANTING IN PART PLAINTIFF'S MOTION TO COMPEL DOCUMENTS - 7